# United States Court of Appeals
## For the First Circuit

No. 06-8033

IN RE: MALCOLM J. BARACH,

Respondent.

ON SHOW-CAUSE ORDER FOR RECIPROCAL DISCIPLINE

Before

Torruella, Selya, and Boudin, <u>Circuit Judges</u>.

<u>Malcolm J. Barach</u> pro se.

August 28, 2008

**Per Curiam**. On August 31, 2006, the Massachusetts Supreme Judicial Court (SJC), acting upon and upholding findings and conclusions reached by a Board of Bar Overseers hearing committee and an appeals panel, see Mass. S.J.C. R. 4:01 § 8(4), ordered the respondent attorney Malcolm J. Barach suspended from the practice of law for a period of two years. According to that court's order, the respondent had (with respect to three unrelated clients) "failed to keep or maintain adequate records of client accounts, failed to return unearned client fees, charged 'clearly excessive' fees, for work he did not perform, falsified time records, and made intentional misrepresentations to bar counsel."

Following receipt of official notice of the respondent's suspension, this court issued an order to show cause why the respondent should not be reciprocally disciplined. See Fed. R. App. P. 46(b)(2). The respondent filed an opposition and sought to appear in person. See Fed. R. App. P. 46(c). We held a non-evidentiary hearing on July 30, 2008. We now impose reciprocal discipline and suspend the respondent from practice before this court.

The framework for reciprocal disciplinary proceedings is familiar. A member of this court's bar who "has been suspended or disbarred from practice in any other court" is subject to reciprocal discipline. Fed. R. App. P. 46(b)(1)(A). Upon receiving official notice that another court has imposed such

-2-

discipline, see 1st Cir. R. Att'y Discip. Enf. (Discip. R.) II.A, a disciplinary panel is named, see Discip. R. II.B, V.A., and the respondent attorney is ordered to show cause why substantially similar discipline should not be imposed, Discip. R. II.B.2. If the respondent files a reply within the allotted period, the panel must consider whether he or she has demonstrated extenuating circumstances sufficient to warrant action different than that taken by the original court. Discip. R. II.C.

When, as now, disciplinary sanctions have been imposed by a state court, we lack jurisdiction in a federal disciplinary proceeding to vacate or modify the state court's imposed discipline. See In re Williams, 398 F.3d 116, 118 (1st Cir. 2005) (per curiam). By the same token, we ordinarily treat the state court's factual findings with a high degree of respect in reciprocal disciplinary proceedings. Id.

Withal, the judgment of the state court as to the type and kind of discipline is not conclusive for federal disciplinary purposes. In re Ruffalo, 390 U.S. 544, 547 (1968). A federal court remains free to make its own judgment as to the federal discipline to be imposed. See In re Williams, 398 F.3d at 118. To accomplish this task, the federal court should fully consider the state record.[1] Selling v. Radford, 243 U.S. 46, 51 (1917).

---

[1]The burden of submitting the record of the state proceedings is on the respondent. See In re Williams, 398 F.3d at 119. Should the respondent default on this responsibility, the court may assume

-3-

This does not mean, however, that a reciprocal discipline proceeding is in any sense a de novo proceeding. "As a general rule, discipline similar to that imposed in the state court will be imposed in a reciprocal proceeding." In re Williams, 398 F.3d at 119. An exception may be made only in the event that we discern from the state record "(i) a deprivation of procedural due process (usually defined as a want of notice or opportunity to be heard), (ii) an infirmity of proof of misconduct such as would give rise to a clear conviction on our part that we could not consistently with our duty accept as final the [state court's] ultimate conclusion, or (iii) the existence of some other serious impediment to acceptance of the state court's conclusion." Id. (citation and internal quotation marks omitted). The essence of this paradigm has been memorialized in Disciplinary Rule II.C, which provides that in reciprocal disciplinary matters the panel should impose substantially the same discipline as was imposed by the original court unless it is persuaded:

> 1. that the procedure used by the other court was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
> 2. that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or

that the record supports the state court's findings. See id. at 120 n.1.

-4-

> 3. that the imposition of substantially similar discipline by this Court would result in grave injustice; or
> 4. that the misconduct established is deemed by the Court to warrant different discipline.

Discip. R. II.C.

When all is said and done, the respondent attorney must carry the burden of proof, by clear and convincing evidence, that the imposition of substantially similar discipline is unwarranted. In re Williams, 398 F.3d at 119; In re Surrick, 338 F.3d 224, 232 (3d Cir. 2003). This usually presents an uphill climb: we have recognized that, "[g]iven the limited nature of our inquiry, the norm will be for this court to impose discipline which is substantially similar to that imposed by the state court." In re Williams, 398 F.3d at 119.

Against this backdrop, we turn to the matter at hand. All the bases have been touched. The customary show-cause order issued. The respondent attorney filed a reply and submitted the record of the state proceedings. He then requested and received a hearing, and proceeded to argue eloquently in his own defense.

We have examined the respondent's proffer and mulled his contentions. Despite the wide-ranging nature of his attack, the only argument that requires discussion is his claim that the Commonwealth denied him due process by setting the bar for proof of misconduct too low. We proceed immediately to that claim.

Massachusetts places the burden of proving misconduct on Bar Counsel in attorney disciplinary proceedings, but authorizes findings of misconduct to be made on the basis of a preponderance of the evidence. Mass. R. B.B.O. § 3.28. This is a minority rule; most jurisdictions require clear and convincing evidence in such proceedings. See, e.g., In re Thyden, 877 A.2d 129, 137 (D.C. 2005); Statewide Griev. Comm. v. Presnick, 575 A.2d 210, 215 (Conn. 1990); La. State Bar Ass'n v. Edwins, 329 So. 2d 437, 441-42 (La. 1976); Bar Ass'n v. Marshall, 307 A.2d 677, 681 (Md. 1973). The respondent alleges that the Commonwealth's choice is constitutionally prohibited, that is, before the Commonwealth could suspend his license to practice law, it was constitutionally required to prove the grounds for the suspension by no less than clear and convincing evidence. This lowering of the bar, he argues, rendered the state court proceedings fundamentally unfair and, thus, violated his due process rights.

Admittedly, the Due Process Clause applies to disciplinary proceedings. See, e.g., In re Franco, 410 F.3d 39, 40 (1st Cir. 2005); In re Cordova-González, 996 F.2d 1334, 1336 (1st Cir. 1993). But the Due Process Clause does not demand that a state devise an ideal set of procedures for attorney discipline. It suffices to satisfy due process if a state adopts procedures that collectively ensure the fundamental fairness of the disciplinary proceedings. See Newman v. Burgin, 930 F.2d 955, 961

-6-

(1st Cir. 1991). In other words, the Due Process Clause imposes a floor below which a state cannot descend, not a level of perfection that a state must achieve.

We understand the importance of a lawyer's right to practice law and agree that, once granted, that right cannot be taken away in an arbitrary or capricious manner. Yet the Due Process Clause is flexible, and reasonable minds can differ as to the need for elevated levels of proof in particular situations. Viewed in this light, the use of a preponderance of the evidence standard in bar disciplinary proceedings does not offend due process. After all, many types of important property rights typically rest, in contested proceedings, on proof by preponderant evidence. See, e.g., Vigilantes, Inc. v. U.S. Dep't of Labor, 968 F.2d 1412, 1416 (1st Cir. 1992) (dealing with debarment from federal procurement); Appeal of Regenesis Corp., 937 A.2d 279, 284 (N.H. 2007) (dealing with revocation of a solid waste permit); Eidson v. State Dep't of Licensing, 32 P.3d 1039, 1044 (Wash. Ct. App. 2001) (dealing with revocation of a real estate appraiser's license). Moreover, other jurisdictions besides Massachusetts use a preponderance standard in attorney disciplinary matters. See, e.g., In re Robson, 575 P.2d 771, 776 (Alaska 1978); In re Crane, 255 N.W.2d 624, 627 (Mich. 1977); Weems v. Supreme Ct. Comm. on Prof'l Conduct, 523 S.W.2d 900, 904 (Ark. 1975). Although there is something to be said on policy grounds for requiring a more sturdy

quantum of proof, the use of a preponderance standard is not so arbitrary or irrational as to render state disciplinary proceedings that use it fundamentally unfair. See In re Friedman, 51 F.3d 20, 22 (2d Cir. 1995).

The respondent claims that the case law demands a different outcome. In support, he cites three decisions. None of them stands for the view of the Constitution that he espouses.

The respondent's most loudly bruited authority is the decision in In re Medrano, 956 F.2d 101 (5th Cir. 1992). There, the Fifth Circuit held that a federal district court had applied the wrong standard in a disbarment proceeding. Id. at 102. The decision does not implicate constitutional principles but, rather, hinges on the fact that disciplinary proceedings in federal courts in the Fifth Circuit require findings based on clear and convincing evidence — a standard that the district court did not apply. See id. at 102.

The second case relied on by the respondent is Koden v. U.S. Department of Justice, 564 F.2d 228 (7th Cir. 1977). That case involved an attorney's year-long suspension from practice before the Immigration and Naturalization Service and the Board of Immigration Appeals. A federal district court upheld the suspension and the lawyer appealed. He neither advanced a constitutional argument nor challenged the quantum of proof needed to buttress the suspension; indeed, the only mention of clear and

convincing evidence in the opinion is the Seventh Circuit's acknowledgment of the standard applied by the agencies.[2]  Id. at 235.  The adoption of such a standard by an administrative agency is a far cry from a declaration that such a standard is constitutionally required.

The last case in the respondent's trilogy is Collins Securities Corp. v. SEC, 562 F.2d 820 (D.C. Cir. 1977).  The court there held that the SEC erred in applying a preponderance standard rather than a clear and convincing evidence standard in revoking various securities industry privileges (e.g., broker-dealer registrations).  Id. at 821.  While the court, which vacated the revocations, plainly favored a standard requiring the use of clear and convincing evidence in connection with the levying of severe civil sanctions, its choice of that standard was couched as a matter of policy applicable to federal administrative proceedings, not as a matter of constitutional law.  See id. at 823-25.

That ends this aspect of the matter.  Refined to bare essence, the respondent's argument raises policy concerns, not constitutional concerns.  But states are sovereigns, and the range of policy choices allowed to them by our federal system in general and the Due Process Clause in particular is wide.  And where, as

---

[2]The agencies adopted the clear and convincing evidence standard on policy grounds, reasoning that "more than a mere preponderance of the evidence should be required to deprive an attorney of his right to practice his profession." Koden, 564 F.2d at 235.

here, the courts of a state have made a constitutionally permissible choice of a standard of proof, it is not the place of a federal court in a reciprocal disciplinary proceeding to substitute its judgment for that of the state. That is true even if we, writing on a pristine page, might have chosen some other standard. Cf. Rodríquez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1031 n.4 (1st Cir. 1988) (concluding that federal court must respect Puerto Rico's policy choice as to age of majority). Accordingly, we must reject the respondent's constitutional challenge to the use of a preponderance standard here.

The respondent's other arguments need not detain us. A proceeding designed to weigh the advisability of reciprocal discipline is not a vehicle for retrying the original disciplinary proceeding. See In re Williams, 398 F.3d at 119. Nor is it a vehicle either for the correction of garden-variety errors or for the revisiting of judgment calls. See In re Bird, 353 F.3d 636, 637-38 (8th Cir. 2003); In re Chipley, 448 F.2d 1234, 1235 (4th Cir. 1971).

In this instance, the respondent's other claims are unremarkable. They challenge such things as alleged evidentiary errors (e.g., the hearing committee's decision to accept an affidavit from an expert witness and, concomitantly, to exclude the expert's live testimony), alleged procedural bevues (e.g., the denial of a motion for recusal), alleged misinterpretations of

-10-

state law (e.g., the rejection of a res judicata defense), and the like.  We have carefully reviewed the state record and doubt that any of these challenges have merit.  More importantly, the putative errors do not suggest any deprivation of due process, any meaningful infirmity in the Commonwealth's proof, or any serious reason why we should hesitate to accept the state court's conclusions.  In short, we see nothing sufficiently egregious to warrant setting aside the presumption of regularity that attends our review.

We need go no further.  Cause not having been shown, we impose upon the respondent attorney reciprocal discipline commensurate to that imposed by the SJC.  Accordingly, attorney Malcolm J. Barach is hereby suspended from the practice of law before this court.  That suspension shall run concurrent with the suspension previously imposed by the SJC, see Discip. R. VII.A, and he shall be eligible to apply for reinstatement at the end of his state suspension.

**So Ordered**.